IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Fruth Farms, Ltd.,                                                Case No. 3:05CV7321

           Plaintiff,

v.                                                              ORDER

The Village of Holgate, *et al.*,

           Defendants.

This is a civil rights case. Plaintiff Fruth Farms owns property over which the Village of Holgate, defendant, has an easement for access to an adjacent parcel it owns. This case involves a dispute between Fruth Farms and the Village over use of the easement, both in regards to who may use the easement and how much traffic over the easement is allowed.

Fruth Farms argues that the Village is exceeding the scope of the easement, giving rise to claims, *inter alia*, under 42 U.S.C. § 1983 for violating the Due Process Clause of the U.S. Constitution. Fruth Farms also claims the Village is violating Article I of the Ohio Constitution, and Ohio state law prohibiting the creation of a nuisance, conversion, and invasion of privacy. The Village argues that use of the easement has no limitations, so long as the easement is used for its stated purposes (namely, access to and maintenance of a sewer line).

Jurisdiction exists under 28 U.S.C. § 1331.

Pending are counter motions for summary judgment regarding the meaning and effect of the easement's language. For the following reasons, both the Village's and Fruth Farms' motions for summary judgment shall be denied.

**Factual Background**

This dispute concerns two parcels located in Flatrock Township near State Route 18 in Henry County, Ohio. In 1974, the Village acquired a 20-acre parcel from George Nicely. Along with the parcel, the Village was granted an easement over a 55-acre portion retained by Nicely. The easement was necessary because the Village's parcel would be landlocked and inaccessible without the easement.

In 1979, Fruth Farms acquired the Nicely property. Its deed stated:

> Said premises are subject to an easement executed by George W. Nicely [. . . ] to the Village of Holgate, a municipal corporation, its successors and assigns, being a permanent easement 30.00 feet in width for an access drive and for the right to construct, maintain, operate and repair a sanitary sewer line over and through the real estate of Grantor . . ..

(Ex. 4).

The easement has a 1,900-foot-long stone driveway. The Village has maintained the easement, keeping it covered with gravel. In the late 1970s, the Village constructed lagoons on its 20-acre parcel. The lagoons are part of the Village's sanitary sewer system. The parcel is fenced and gated.

Fruth Farms contends that, sometime in 2005, the Village established a public waste disposal site on its 20-acre parcel. Fruth Farms states that Village residents began to travel on the easement to get to the dump. Fruth Farms repeatedly demanded that the Village stop the public from using the easement to access and use the dump.

Fruth Farms installed a gate to keep out members of the public, while giving a key to the gate to Village officials so that Village employees could access the Village's parcel. Fruth Farms accuses Village officials of intentionally leaving the gate unlocked on a daily basis, thereby enabling anyone to use the easement to get to the dump.

The Village contends the easement has always been used in the same manner. The Village states the parcel had been used for yard waste disposal before Fruth Farms purchased the servient tenement. It also alleges that Fruth Farms was aware of this use of the easement when it purchased its land.

Fruth Farms filed this lawsuit on August 2, 2005, alleging that the Village was violating the terms of the easement by unlawfully expanding its use. The Village maintains that the language of the deed creating the easement puts no limits on how the easement may be used, provided it is used to access the 20-acre parcel.

The parties dispute the meaning and effect of the easement.

Fruth Farms contends *only* the Village as a municipal corporation, acting through its employees, may use the easement. Thus, according to Furth Farms, the general public – including Village residents – cannot use the easement to access the parcel.

The Village argues, however, that use of the access easement is unlimited and without restriction, so long as the easement is used to access its property. Thus, under the Village's view of the easement's language, *who* uses the easement – be it municipal employees or residents – is irrelevant, provided the reason the person uses the easement is to get to the Village-owned parcel.

**Discussion**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In viewing the evidence, I must draw all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Best v. Cyrus*, 310 F.3d 932, 934 (6th Cir. 2002); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bell v. Marinko*, 367 F.3d 588, 591 (6th Cir. 2004) (citing *Shah v. Deaconess Hosp.*, 355 F.3d 496, 498 (6th Cir. 2004)).

An easement is a non-possessory interest in the land of another. *Crane Hollow, Inc. v. Marathon Ashland Pipe Line*, 138 Ohio App. 3d 57, 66 (2000). There are two kinds of easements: easements in gross and easements appurtenant. *See, e.g.*, *Junction R.R. Co. v. Ruggles*, 7 Ohio St. 1, 8 (1857); *Warren v. Brenner*, 89 Ohio App. 188, 192 (1951). An easement in gross is assigned to an individual person, does not run with the land, and cannot be assigned or inherited. *Junction R.R. Co.*, 7 Ohio St. at 8. Easements appurtenant run with the land. *Warren*, 89 Ohio App. at 192. Ohio law disfavors easements in gross, and, as such, easements are not considered in gross "when it can be fairly construed to be appurtenant to some estate." *Lone Star Steakhouse & Saloon of Ohio v. Ryska*, 2005 Ohio 3398, *9 (Ohio Ct. App. 2005).

The easement at issue here is appurtenant: it runs across the servient land owned by Fruth Farms to provide access for the otherwise land-locked dominant parcel owned by the Village.

An easement appurtenant gives rise to two estates: dominant and servient. The owner of the easement is referred to as the owner of the dominant estate. *Myers v. McCoy*, 2005 WL 1038871, *3 (Ohio App.). The land in which the interest exists is called the servient estate. *Id.* The owner of the dominant estate has the right to use the easement across the servient estate. *Crane Hollow, Inc.*, 138 Ohio App. 3d at 66.

The Village's 20-acre parcel is the dominant estate; Fruth Farms owns the servient estate.

### 1. No Dedication to Public Use

The Village makes several arguments in support of its contention that use of the easement is not restricted to its employees.

First, the Village contends the easement was dedicated to public use. That is incorrect. Section 5553.31 of the Ohio Revised Code governs dedication of public roads and states:

> Any person may, with the approval of the board of county commissioners, dedicate lands for road purposes. A definite description of the lands to be dedicated with a plat of such lands thereto attached and signed by the party dedicating such lands, with the approval and acceptance of the board endorsed thereon, shall be placed upon the proper road records of the county in which such road is situated.

There have been no proceedings under O.R.C. §5553.31 in regards to this easement. Likewise, nothing in the record indicates the original owner of the servient tenement intended the land to be a public way.

Next, the Village argues that a common law dedication of a public way has occurred. In *Beauchamp v. Hamilton Township Trustees*, 1994 Ohio App. LEXIS 1877 (Ohio App.), according

to the Village, a deed granting a county a right-of-way easement for a ditch was tantamount to dedicating the property for public use. That is an incorrect reading of *Beauchamp*: the easement at issue in that case specifically stated the grantor of the easement "dedicates to public use" the property in question. *Id*. at *2. The easement at issue here contains no such express dedication for public service and use. Under the terms of this easement, it is granted to the Village as a municipal corporation.

Public dedication can also occur through public use and acquiescence on the part of the owner of the servient tenement:

> A common-law dedication of property to a public use may result from the use thereof by the public, with the mere silent acquiescence therein of the owner, for a period sufficient to warrant the inference, from such acquiescence, of an intention to make such dedication, even though such period be less than 21 years.

*Doud v. Cincinnati*, 152 Ohio St. 132, 135 (1949).

Fruth Farms has not, however, remained silent in the face of its belief that the easement is limited. Instead, it made frequent protests, erected a gate, and has brought this suit. These are not the acts of one who consents to how an easement is being used.

Therefore, the easement has not been dedicated to public use.

## 2. The Village Cannot Assign Its Interest in Easement to Villagers

The fact that the easement has not been dedicated to the public does not entirely dispose of the parties' arguments over who can use the easement. The Village argues that because the easement appurtenant was granted to its "successors and assigns," it can simply assign its rights to the easement to every Village resident.

One cannot separate an easement appurtenant from the dominant estate. *State ex rel. Lindemann v. Preston*, 171 Ohio St. 303, 305 (1960). An easement appurtenant cannot, therefore, be assigned to another person separately from the dominant tenement. *Henson v. Stine*, 74 Ohio App. 221, 224 (Ct. App. 1943) (holding that an easement can only be conveyed in the same manner as land); *see also State ex rel. Lindemann*, 171 Ohio St. at 305 (holding that a dominant tenement owner cannot separate an easement from the land to which it is appurtenant or convert an easement appurtenant into an easement in gross by grant of a license). Thus, a person or entity cannot assign the interest in an easement appurtenant to another. *Id.*; *Ricelli v. Atkinson*, 99 Ohio App. 175, 181-82 (Ct. App. 1955) ("An easement is not alienable separately and apart from the land to which it is appurtenant.").

That Fruth Farms' predecessor in interest gave the easement at issue here to the Village's "successors and assigns" does not change the outcome: The Village can assign its easement as it pleases, so long as the easement is assigned in conjunction with the dominant estate. *Ricelli*, 99 Ohio App. at 180; *State ex rel. Lindemann*, 171 Ohio St. at 306 (an easement appurtenant "is not a separate entity" from the dominant tenement and, thus, one cannot transfer it separate from the dominant tenement); *see, e.g., Henson*, 74 Ohio App. at 224 (an easement "is a right or privilege annexed to the ownership of real property").

Thus, the Village is free to assign its easement appurtenant to others, but can only do so in accordance with Ohio law, which prohibits the assignment of easement appurtenant separate from transfers of the dominant tenement itself.

### 3. Reasonable Use by Guests and Invitees Is Permitted

The owner of the dominant tenement is not the only person who can use an access easement to his or her property. *See Baker v. Contini*, 1994 WL 75676, *2 (Ohio App.). An easement-holder has the right to receive guests and invitees. *Id.; see also, e.g.*, *Clement v. Fishler*, 28 Ohio App. 392, 393 (1972). Use of an unrestricted easement for access must be reasonable; an easement is terminated by overuse. *Hiener v. Kelley*, 1999 WL 595363, *11 (Ohio App.).[1]

Thus, others may use the easement to access the 20-acre parcel, but their use of the easement must be reasonable and comply with basic principles governing the use of easements.

### 4. Analyzing the Language of the Deed Granting the Easement

The language at issue in this case is that the Village has an easement: "for an access drive and for the right to construct, maintain, operate and repair a sanitary sewer line over and through the real estate of Grantor". (Ex. 4).

For an easement created by an express grant, such as this easement, the extent and limitations on the dominant estate's use of the land depend on the specific language in the grant. *Jolliff v. Hardin Cable Television Co.*, 26 Ohio St. 2d 103, 106 (1971). Thus, a court must first look to the

---

[1] Courts elsewhere agree that a private right-of-way easement may be used by the owner of the dominant tenement and the owner's family, tenants, servants, guests, and those transacting business with the dominant tenement. 28A *Corpus Juris Secundum Easements* §164. The owner of the dominant tenement may not, however, transform an easement for a private right of way into a public thoroughfare. F.T. Chen, *Extent and Reasonableness of Use of Private Way in Exercise of Easement Granted in General Terms*, 3 A.L.R. 3d 1256 §5a [*Extent and Reasonableness*](citing town of *Sandown v. Kelley*, 97 N.H. 418, 419-20 (N.H. 1952)). Use of a rural way for heavy traffic going to an oil sump established on the dominant tenement has, for example, been held to be improper. *Wall v. Rudolph*, 198 Cal. App. 2d 684, 691-92 (1961). *But see Arcidi v. Town of Rye*, 150 N.H. 694, 703 (N.H. 2004) (stating that *Sandown* does not stand for the "broad proposition" that the owner of the dominant tenement cannot convert "a private right of way to public use").

terms of the grant to determine the scope of the easement, *id.*, because the extent and scope of an easement arise "from the language of the grant and the circumstances surrounding the transaction." *Rueckel v. Texas E. Transmission Corp.*, 3 Ohio App. 3d 153, 159 (1981); *Ricelli v. Atkinson*, 99 Ohio App. 175, 182 (1995) (an easement's scope is "to be determined by the intention of the original parties gathered from the terms of the deed [and] the circumstances which surrounded the parties at the time of the conveyance"). Courts also consider the easement's intended purpose because a "court should construe the easement in a manner that permits the dominant estate to carry out its purpose." *Crane Hollow, Inc., supra*, 138 Ohio App. 3d at 66.[2]

Fruth Farms argues the terms of the easement show "the parties expressly contemplated that the dominant tenement [ . . .] would be used as a sewage treatment facility and that the burden on the servient tenement would be consistent with that anticipated use." (Doc. 24 at 8). It also argues that any "additional uses of the property that result in a significant increase in traffic upon the access drive constitutes an unreasonable increase in the burden on the servient tenement." (Doc. 24 at 7).

Fruth Farms argues that the word "and" in the description of the easement ("for an access drive *and* for the right to construct, maintain, operate and repair a sanitary sewer line") is "meaningless." (Doc. 24 at 3).

---

[2]

The range and scope of permissible uses of a particular easement is determined by the circumstances surrounding the creation of the easement (to the extent the court can obtain knowledge about those circumstances). *Wright v. Horse Creek Ranches*, 697 P.2d 384, 388 (Colo. 1985); *see also* 28A *Corpus Juris Secundum Easements* §159. The surrounding circumstances incident to the easement's creation are important because the uses of an easement must be confined strictly to the purposes for which the parties created it. *Dep't of Fish & Wildlife v. Kortge*, 733 P.2d 466, 469 (Ct. App. Ore. 1987); *Embrey v. Weissman*, 253 N.W. 2d 687, 690 (Ct. App. Mich. 1977);*Dillon v. Klamut*, 420 A. 2d 462, 465 (Pa. Super. 1980); *see also* 28A *Corpus Juris Secundum Easements* § 159.

Furth Farms is incorrect. As a matter of grammatical construction, the easement permits use of the road for general access and, as well, for construction of a sewer line. The language granting the easement does not explicitly limit the easement's use in conjunction with a sewage treatment facility: it only mentions the Village has "the right to construct, maintain, operate and repair a sanitary sewer line over" the property. (Ex. 4).

The wording, thus, does not provide that the sewer line would connect to a sewage treatment plant located on the property. The sewer line mentioned in the easement could have connected to whatever facility was placed on the property. At the time the easement was granted, the parties may have anticipate that the sewer line would connect to a planned sewage treatment facility on the property. Such an expectation is not embodied in the language of the easement.[3]

The access easement is not, therefore, by its own terms limited to use consistent with a sewer treatment plant.

### 5. Overuse of an Easement, Changes in Use

An easement is terminated if its owner attempts to enlarge or abuse it. *Hiener v. Kelley*, 1999 WL 595363, *11 (Ohio App.). "Whether an easement is extinguished through overburdening or misuse is an issue of fact." *Id.*; *see also Myers v. McCoy*, 2005 WL 1038871, **3-4 (Ohio Ct. App.).

---

[3] I make no ruling as to the relevance or other admissibility of evidence, if such is available, about the expectations of the parties when the easement was created, or the effect of such evidence on the matters in dispute.

11

Increased traffic on an access easement can constitute an unreasonable burden on the servient estate. *Solt v. Walker*, 1996 WL 363438, *2 (Ohio App.); *see also Hiener*, 1999 WL 595363 at *11 (stating that "the owner of the dominant estate may not increase the burden" on the servient estate).[4]

For example, early disposition of a case is inappropriate if preliminary evidence shows "reasonable minds could differ regarding whether the owner of the easement who increases his business has simply developed his land in a reasonable manner, or has burdened the servient estate with increased traffic." *Id.*; *Solt v. Walker*, 1996 WL 363438, *2 (Ohio Ct. App.) (stating that issue before a trial court is whether "the easement was enlarged as a result of natural growth of the dominant estate, and is, therefore, a reasonable use of the easement, or whether the easement should be terminated due to enlargement and abuse of the easement").[5]

In *Solt*, a court held that the increase in traffic across an easement that resulted from an increase in the number of horse boarders on the dominant tenement presented a question of fact as to whether the dominant tenement's owner had abused the easement. *Id.*

---

[4] Whether increased traffic amounted to overuse of an unrestricted easement for access is a question of fact. *Solt*, 1996 WL 363438 at *2.

[5] Some courts outside of Ohio have found that, overall, a mere increase in the number of persons using an easement granted as a general right of way is not an unlawful additional burden on the servient estate. 28A *Corpus Juris Secundum Easements* §161 (citing *Henkle v. Goldenson*, 248 N.W. 574, 575 (Mich. 1933); *Siedler v. Wain*, 109 A. 643, 645 (Pa. 1920). The Supreme Court of Michigan has stated, however, that while "a mere increase in the number of persons using an unlimited right of way [. . .] is not an unreasonable burden," courts have "recognized that in some cases the increase may be such in fact as to amount to an unreasonable burden." *Henkle*, 248 N.W. at 575; *see, e.g., Walker v. Bennett*, 315 N.W. 2d 142, 144 (Mich. App. 1981) (holding that whether dividing dominant estate to create fifteen additional lots would be an unreasonable burden on the servient estate was a question of fact). *But see Hayes v. AquaMarina, Inc.*, 414 S.E.2d 820, 822-23 (Va. 1992) (proposed increase of boat slips in a marina from eighty-four to 280 would not cause an improper "additional burden" on the servient estate).

Under *Solt*, factors for an Ohio trial court to consider in weighing whether a dominant tenement has overused an access easement include: 1) the amount of increased traffic on the property; 2) the time of day when vehicles used the easement; 3) the extent that traffic noise increased; 4) whether passing vehicles kicked up dust and dirt that interfered with the servient tenement's use and enjoyment of its property; and 5) whether vehicles using the easement traveled at excessive speeds. 1996 WL 363438 at *2.[6]

---

[6]

Courts outside of Ohio also have held that expansion or increased development of the dominant parcel – and the accompanying increase in use of the access easement granted over the servient property – can result in a finding of misuse or overuse of the easement. *See* James L. Buchwalter, *What Constitutes, and Remedies for, Misuse of Easement*, 111 A.L.R. 5th 312 (collecting cases and analyzing them) [*Misuse of Easement*].

A right of way created by an unrestricted, general grant of an easement cannot be used in a manner that burdens the servient estate more than was originally contemplated by the parties: an unrestricted access easement does *not* allow unlimited use, but only reasonable use. *Wheeler v. Lynch*, 445 A.2d 646, 648-49 (D.C. 1982) (cited in Buchwalter, *Misuse of Easement*, 111 A.L.R. 5th 312 §5a).

For example, a court held that development of the dominant estate improperly increased the burden on the servient estate and constituted misuse of the easement because the dominant owner created roads on his land which made the easement accessible to many more people, even those who did not occupy the dominant estate. *Knotts v. Summit Park Co.*, 126 A. 280, 283 (1924). (cited in Buchwalter, *Misuse of Easement*, 111 A.L.R. 5th 312 §5c).

Likewise, if an easement was granted to be used as a single-dwelling driveway, the dominant tenement cannot develop its property to use the easement as a parking lot for a senior citizen housing development. *Nadeau v. Town of Durham*, 531 A.2d 335, 338 (N.H. 1987) (cited in *Misuse of Easement*, *supra*, 111 A.L.R. 5th 313 §6a). The court held that such a change would be an unreasonable increase in the burden on the servient tenement, particularly because of the increased noise, traffic, and lighting that would result in the change from a single-family dwelling driveway to a senior housing facility parking lot. *Id.*

In another case, a Tennessee court held that subdividing the dominant estate overburdened the servient estate because the easement would – after development – serve two families and not one. *Jones v. Parker*, 1993 WL 453756, *2 (Tenn. Ct. App. 1993).

Courts outside of Ohio have employed other factors in determining whether a dominant tenement owner's use of an easement granting a general right of way was "reasonable." *See* 28A *Corpus Juris Secundum Easements* §161. The factors have included: 1) the intent of the parties regarding the easement's purpose; 2) the circumstances surrounding the easement's creation; 3) the nature and condition of the premises over which the easement was granted; 4) the manner in which the easement has been used in the past; and 5) the advantage to the dominant tenement and the disadvantage to the servient tenement. *Id*. (collecting cases).[7]

In general, "changes in the use of an easement are permitted to the extent that they result from the normal growth and development of the dominant land, and are, therefore, a proper and reasonable use of the easement." *Hiener*, 1999 WL 595363 at \*\*11-12 (citing *Erie Railroad Co. v. S.H. Kleinman Realty Co.*, 92 Ohio St. 96 (1912)).[8] In short, "the court should presume that the parties contemplated that normal development would result in some changes in the mode of use of

---

[7] Overall, the determination of the reasonableness of the extent of use of an easement created by an express grant requires construction of the grant. *See* Chen, *Extent & Reasonableness*, 3 A.L.R. 3d 1256 § 2a. In construing documents granting easements, courts have employed several basic principles. *Id.* First, the grant must be construed in the light of the situation of the property and the surrounding circumstances, in order to ascertain and give effect to the intention of the parties. *Id.* Second, if the language of a grant is clear then the court must give that language effect: Scrutinizing extrinsic facts and circumstances cannot modify the clear terms of a grant. *Id.* Third, the past behavior of the parties in the use of the easement is relevant in determining what the parties envisioned to be reasonable use. of the easement. *Id.* Lastly, in case of doubt, construction should be in favor of the grantee. *Id.*

[8] If the different use of the dominant tenement is "normal and reasonable development" then "the resulting [. . .] increased use of the right of way is by and large regarded as reasonable." *Extent & Reasonableness , supra,* 3 A.L.R. 3d 1256 § 2a. However, "[t]he servient tenement may not be subjected to new and unreasonable burdens not contemplated by the parties." *Id*. 3 A.L.R. 3d 1256 § 5 (citing cases).

the easement, even if it were unlikely that the parties anticipated the specific developmental changes." *Crane Hollow, Inc.*, 138 Ohio App. 3d at 67; *see Myers*, 2005 WL 1038871 at *3-4.[9]

While changes resulting from "normal development" are permissible, "[a]n easement holder may not increase the burden upon the servient estate by engaging in a new and additional use of the easement." *Crane Hollow, Inc.*, 138 Ohio App. 3d at 67; *Hiener*, 1999 WL 595363 at *11 ("The owner of a dominant estate may not increase the burden nor materially enlarge his right over the servient estate."); *Myers*, 2005 WL 1038871 at *4.[10]

The Village argues that because the deed's language states the easement is for access to the dominant tenement, any amount of use is permitted – so long as the easement is used to get to the

---

[9]

The law of other states mirrors that of Ohio. The common principle is that if the right of way is granted for a general purpose without limitation as to its use, the right of way will not be confined to the purposes for which the land was used at the time the way was created. 28A *Corpus Juris Secundum Easements* §161 (citing *Rajewski v. McBean*, 172 N.E. 882 (Mass. 1930)). A right of way granted for general purposes may, therefore, be used for any purpose to which the land accommodated by the way may naturally and reasonably be devoted. 28A *Corpus Juris Secundum Easements* §161.

[10]

The *American Law Reports* have collected cases analyzing the reasonableness of use of an unrestricted access easement.

> The most comprehensive restriction that is imposed upon the use of a general right of way by the dominant owner is that he may not so use the way as to unduly increase the burden upon the servient tenement. Thus, the rule that the right of way cannot be used to burden the servient tenement *to an extent greater than was contemplated at the time of the grant* has been applied as a test in determining the reasonableness of particular uses, both in terms of their extent and their manner.

*Extent & Reasonableness, supra*, 3 A.L.R. 3d 1256 § 2a (emphasis added).

dominant tenement. Under the Village's view, an unrestricted easement for access granted to a dominant estate necessarily permits an unlimited amount of people to travel on the easement without restriction based on time of day, method of transportation, speed, or so forth.

That, however, is not the law in Ohio: use of easement for access must be reasonable, and – depending on the factual situation – the dominant tenement can abuse an easement by overuse through increased traffic. *See, e.g., Solt*, 1996 WL 363438 at *2.

Thus, the issue on whether the dominant tenement has overused an easement is a question of fact concerning whether the easement's use is consistent with "normal development" of the dominant tenement or an unreasonable increase in the burden on the servient estate.

### 6. Summary Judgment Inappropriate

Summary judgment is not warranted at this point because discovery is needed on critical facts. To decide if the Village's use of the easement has increased to the extent that it is an unreasonable burden on the servient estate, I must weigh the factors such as those outlined in *Solt*. I cannot do so, however, because I lack information about whether those factors are present in this case. For example, I do not know if residents going to the dump site travel at odd hours of the day or at excessive speeds.

In fact, the parties do not even agree that use of the easement has changed: Fruth Farms claims the Village increased use of the easement by locating a dump on the parcel; the Village insists the parcel has always been used for yard waste disposal.

Therefore, I cannot know if use of the easement has increased and imposed any additional burden on the servient tenement. The parties must engage in discovery to determine: 1) when the

Village began using the parcel as a yard waste disposal site; 2) the extent use of the easement increased; and 3) whether any of the other factors referenced in *Solt* are present.

Thus, summary judgment is not warranted for either party at this time.

## Conclusion

For the foregoing reasons, it is therefore,

ORDERED THAT the parties' counter–motions for summary judgment be, and the same hereby are denied.

A scheduling conference is set for August 25, 2006 at 9:30 a.m.

So ordered.

/s/ James G. Carr  
James G. Carr  
Chief Judge
